Icon Health and Fitness v. Strava, an appeal from the Patent Trial and Appeal Board relating to the PTO's determination to deny issuance of a patent or with respect to a reexamination. respect to a reexamination. Icon Health and Fitness We're all judges and whether we do it at the district court level, whether we did it at the trial level or we do it now, we often say for all the reasons articulated by the district court, for all the reasons articulated by counsel for the defendant, we rule this way. And sometimes that's because we couldn't say it better and we don't have time to say it better because we've got so much else to do. So the question is, I mean, I don't think you can say they can never incorporate by reference. The question is, what did they incorporate? Right, and we have no idea what they incorporated and we have no idea what the reasoning is and therefore it cannot meet the standard of sufficiency for review. I'll give you one egregious example that is stark in relief and a backdrop for this argument. If you look at the arguments as they relate to claims 57 through 62 and claims 65, you'll recall that the reasoning in the board at page 19 of their decision, that's A20 and 21, in two consecutive statements, they say our reasoning is set forth above. They chide Icon Health and Fitness for advancing the arguments that they've advanced below and then they say, and for the reasons that we discussed above. You can look in vain and there are no discussions of that issue, none. No basis. No sufficiency. No explication. No reliance on any of the questions. I'm letting you give your egregious example, but I have some questions. Please. Okay. What are the qualifications required for a posita in this instance? In this particular instance, the person of ordinary skill in the relevant art has to have knowledge with respect to an exercise system that has portability, that has the ability to test the physical activity of an individual engaged in the activity and incorporate a separate communication system. And so it spans the breadth. So was Mr. Coperda qualified as an expert? Say again? Was Mr. Coperda qualified as an expert? Mr. Coperda may be qualified as a person of ordinary skill in an aspect of the art. However, he has no basis for rendering a legal opinion. Where did you object to his qualifications? We did not object to his qualifications because the opinions that he rendered are not sufficient to overcome the elements and elegance of elements in this patent. And that's demonstrated all the way through. And if I may, just in the few minutes that I have left. Well, I mean, there's a couple options here. I mean, and maybe this is partially because of page limits and there's so many claims at issue here. But I mean, on one hand, you sort of say they can't incorporate by reference, so just send it all back and tell them to do it right. Right? That is one basis for a reversal here. Yes, Your Honor. Okay. Now, what if we did that and all he did was rewrite the expert's conclusions rather than incorporate them by reference? Would that change things? If there is a demonstration of appropriate reasoning that shows why, but here that can't happen. Let me give you a couple of examples. You can't use, for example, the Poulton reference, which has an array of CRTs, and these are large cathode ray tube monitors, and you can't have that in a portable device. So, the suggestion that that in combination would render a claim obvious is ludicrous. Going on, if you talk about the Teller reference and you want to talk about the requirements for infrared or the requirement for the electrical connections, Teller gives you nothing in that regard. In fact, Teller cannot, cannot give you anything, and on that particular instance you have contradiction between Strava and their own expert. And so all you have, they could write an opinion, but it would be based on contradictory evidence that would be proposed. If you take the Shum reference, which deals with adding an accelerometer to a sophisticated GPS system, once again that would be a classic case of incorporating teaching away art, because what you would be doing is taking a little device that is inferior, that senses motion, and replacing a GPS device, rendering that particular reference inadequate for its intended purpose. And this can be done in each and every instance on your de novo review, and in each instance, your honors. For those reasons, there should be a reversal in total on all the claims. On individual and deeper inspection, what you will find is that none of these proposed bases for invalidity based on obviousness are sufficient to accomplish the task. And that is why, your honor, you see someone in a board decision saying, as discussed above, and then nothing is there. Its conspicuous absence cries out in this case for reversal. The board should be held to a standard not only where they give sufficiency of reasoning and explanation for their decision to be held up to public scrutiny, but more importantly, to allow this court an opportunity to appropriately and properly review what is before us. Counsel, what about a situation where it could be said that the examiner is somewhat cursory in its analysis, but yet the board goes through and says, we agree with the examiner, and then goes through and plucks out elements of evidence to reach its conclusion? The statutory requirement here, your honor, is that there be a detailed account of the underlying evidence supporting a finding of fact, or the underlying fact supporting a conclusion of law. So by your definition... I've heard you argue that before. Now, we're here, we're reviewing the board's decision. So if the board's decision recites evidence and says, we agree with the examiner's conclusion for these reasons, and then recites evidence, but yet the examiner's own analysis is sparse, let's see, isn't that enough for us to review the board's decision? Yes, of course it's enough to review, but it's likely that a cursory decision in that regard that doesn't provide... Isn't that what this discussion is all about? Whether we have before us sufficient information upon which to review and render a judgment? It is an aspect of the decision. There are independent bases why all of these claims are not obvious, to demonstrate that they are not obvious. But the overall and overreaching conclusion that could be reached summarily is that there is no sufficient reasoning that has been advanced. There's been no entity authorized to make the legal conclusion that has done so. And never was there a better example of this than in this case where they say, we discussed this above, and they didn't. So that doesn't even meet your standard, Your Honor, in this question of a cursory explanation. That could never reach the standard required of a detailed account of the underlying evidence supporting a finding of fact or a showing that they have executed their obligations and duties under the law. Under those circumstances, Your Honors, the scales of justice perceptibly tip in favor of reversal in this case. And reinstitution of these claims is valid in enforceable claims. OK. You've used up almost all your rebuttal. I'll give you three minutes. Thank you, Your Honor. May it please the Court, Your Honor, Glenn Forbis on behalf of the appellates. Mr. Forbis, as to claims 57 to 62, 65 and 86, looking at pages 20 and 21, of the record 19 and 20 in the decision, the PTAB says that Icahn's arguments were, quote, discussed above, close quote, and, quote, addressed previously, close quote. So would you show me where in the record that happened? Your Honor, we can't show you where because they didn't explicitly address those. What the PTAB did say is that where we haven't explicitly addressed an argument, there was a catch-all phrase. And they said that where we haven't explicitly addressed an argument, we incorporate by reference. But they said they didn't. I know. No doubt that was contradictory. And they did not do that. So I submit to the Court that they made an error in saying that they had discussed it above. To the extent that they didn't, by default, they're incorporating the reasoning of the examiner's position. By default. Wait. This was a really frustrating case for me. Because I'm going through trying to figure out what the heck was the basis for the board's decision. And so in order to find it, I have to go back and say, OK, first of all, sometimes they said they were incorporating the examiner's reasoning. Sometimes they didn't even say that. And then when they did say they were incorporating the examiner's reasoning, the examiner's reasoning wasn't there. It just was incorporating something else. And you have to go back and figure out what they must have been incorporating. How is that an appropriate record upon which we should conduct an appellate review? Well, Your Honor, there's multitudes of claims here. And what you just described occurs in one or two instances. A number of the instances of the claims that are addressed here, where the board may say we agree with what the examiner did, you go to the examiner's actual findings, and there's actually written out findings there. Can the examiner incorporate a party's arguments as its factual findings? No, Your Honor. But what the board can do is incorporate the factual findings of the examiner from the right of appeal notice, and that's perfectly fine. And so I understand that there's a reference there where the board indicated they incorporated and relied upon the examiner's findings in the right of appeal notice and also respondents' arguments in the brief. Well, I'm interested in what the examiner can do. So if the examiner incorporates a party's arguments, does that include the underlying prior art references and expert declarations on which they rely? Yes, Your Honor. So which parts? Everything that's referenced in the argument. So in this case, what we – let me – The quoted parts? The paragraphs that are cited? The cited paragraphs. So what you're asking is what – The whole document? No, I think, Your Honor, is what is incorporated by reference when the examiner says I'm relying upon the comments, right, the requester's comments from these pages? And that's what was done. The examiner said I rely upon the requester's comments from these pages. In those pages are references to Cuperta's declaration. Yeah, but they're also just lawyer arguments in those pages. So we're supposed to go through those pages and figure out what the examiner was really relying on and then assume the board did the same thing. Well, Your Honor, I concede that for ease of reference for a reviewing court like yourself, it would be better and preferable if it actually gets written out. No doubt it's easier because you don't have to go through the process of what was incorporated and what was incorporated. But here, I don't think it's a mystery. I don't think that while it takes effort on behalf of Your Honors and counsel to elicit out what the board did and then what the examiner did, it's doable, and that's what was done in the briefs. It's not a mystery what was relied upon. Part of my concern here is that the whole reason we have IPRs is because there was some belief that the examination process wasn't clear and thorough enough. And so now we spend all this money and time getting rid of patents, but we have the examination process being short-circuited. I understand the concern, and quite frankly, there's nothing perfect in the patent system. Including us, I assume you mean. Well, I'm not counting on that. You'd have to argue that to the Supreme Court. That's right. But on these particular facts, Your Honor, I'm not saying that short-cutting things is preferable for the ease of reference for the court or for counsel. What I'm saying is that on these particular facts, the question is whether or not this court can, in fact, review what the examiner did and the board did. You conceded that, at least as to some claims, they just erroneously stated things. No, Your Honor, I don't concede that. What I concede is with respect to one set of claims, one set of claims only. That's 57 to 62, 65, and 86. That's right. Not 86. Yes, 86. Addressed previously. Regarding 86. Okay, with respect to 86, I agree. Okay. With respect to those claims only, the board did make a mistake by saying we reviewed for the reasons we stated above. But they do have a catch-all. And they do have a statement that says, look, to the extent that we don't explicitly say that. Supposing the catch-all said everything we said was right. No, what it says explicitly, what the board said explicitly was, to any extent that we do not. To the extent that findings of facts should be conclusions of law, they shall be determined to be conclusions of law. I used to do boilerplate. Right. Your Honor, again, I go back to the issue here. That on these facts, is it a mystery as to what the board and the examiner actually relied upon and what their conclusions were? And I say, no. This is an opinion that is reviewable. Right. So the question, is it a mystery? That's my big thing. Is it a mystery? Or is the question really, how much time and effort would the Court of Appeals need to go through to ferret out the answer to that mystery? Well, again, Your Honor, I think that in this particular instance, there's a lot of burden on the counsel for going back and ferreting out what the board relied upon and then what the examiner relied upon. Because there's two levels of incorporation, no doubt. But, again, it is doable. Counsel did it in the briefs. And it is a matter of substitution of what was written in the requester's comments into the right of appeal notice and then into the board's opinion. Is it optimal? Is it easy? Is it the easiest thing possible? No. But it is doable. And in this particular case, you shouldn't overturn the reasoning. And the other question is that is it error? And when we have a board opinion, for example, that relies on the examiner, examiner analysis, and then the examiner says, quote, segments of expert testimony, and you look at them, and the expert there is stating legal opinions, that's another issue of whether those words actually have what type of effect they have. But when an examiner does not undertake a legal analysis and then cites to an expert report that does take a legal analysis, then I have a big problem with that. Because it's not an issue of my fair reading now and how much time I have to do the work. It's whether the board and the examiner got it right or wrong. And they need to state why they reached the result they did in order for me to make that determination. I think there's a problem here. I understand your concern, Your Honor. Let me try to address that. First of all, when you look at the expert's declaration here, he did not render legal opinions. He said he gave factual analyses and opinions detailed. This is not a case where you have a conclusory opinion and the expert just went down the list and said it. The other side of the page, this is 16 of the brief, but I like 15 better, where it says, it would have been obvious to combine Jacob and Rue transferring. It would have been obvious to one ordinary skill in the art to incorporate. It would have been obvious to configure. These are all different statements. Now, if this case wasn't teed up the way it is, maybe I don't have a problem with that. But if the examiner doesn't undertake a legal analysis and the board says, we adopt by incorporation the examiner's analysis, then there is no legal analysis. Well, with respect, Your Honor, no doubt Mr. Kapur to the expert rendered opinions that it would be obvious to make certain combinations, but that followed on the heels of detailed factual reasons and analyses as to why he believed that. And as Judge Wallace – He's on the Ninth Circuit. I'm sorry, Judge Wallace. Earlier asked, is that an opinion, a legal opinion? The answer is no. He gave a factual opinion. As a person of ordinary skill in the art, he gave an opinion that it would have been obvious to make these particular combinations. He did not say, I've weighed all the factors and I've come to a legal opinion on that. We have to believe that the examiners and the board knows it's their job to come to the ultimate conclusion of obviousness as a legal principle, as it is this court's job to review that de novo. But we don't do that with hope. We do that by looking at the actual decision that they rendered. And I would submit, Your Honor, that on these facts, when you look at the decision that was rendered, if you do the incorporation, if you will, if you go through the effort to take the board's opinion, incorporate what the examiner did, and in instances where the examiner relied upon the arguments of the requester, incorporate those and create, in effect, the document that the final opinions of obviousness are all supported by substantial facts. And we can go through them. They're submitted, they're supported by substantial evidence. You're not seriously arguing that we're the ones that should decide in the first instance the obviousness? Oh, no, I'm not arguing that, Your Honor. But I'm arguing that the examiner found it to be obvious as a legal matter. The board affirmed that. But what is it that we should be constructing here? Why do you say it's up to us to go back and figure this out? No, I'm not saying that it's your job to decide obviousness in the first instance. I'm acknowledging the fact that there isn't the board opinion that goes through and copies. They didn't go through the effort of copying the examiner's analysis, and where the examiner incorporated comments from the requester. Their actual arguments into a single document that could be given to this court to review. That's unfortunate, but I don't think it's legal error. And I think that on these facts it would be wrong to reverse it because it is doable. You can review the opinion. You know what the examiner did because he said, I relied upon these comments from these pages and this portion of the evidence. And I could go through each one of these and demonstrate why these final conclusions of obviousness are supported by the record and supported by the evidence. Well, I appreciate that you could do it, and I'm sure that we could do it, but I believe this is a job of the PTAC to do. Well, Your Honor, if I may. Was that an agreement? No, it's not an agreement. So I acknowledge your position on it. I don't believe that on these facts, Your Honor, that we should reverse because the board could have done the job of incorporating physically into a single opinion. Let me address some of the individual issues for a second. The issue of contacts in those claims, claims 57 to 62 and 65 and 68. Just let's look at this for a second, what we're talking about. The tele-reference is one that says you have a mobile device to monitor physical attributes of a person. And you can communicate that data to a computer. You can do it in a couple of different ways. One is through an electrical connection, through a USB port, which is obviously an electrical connection. Or you can, for convenience purposes, put that sensor into a cradle, and the cradle communicates to the computer by an electronic communication, an electronic connection. And the argument that we have here is that the connection between the sensor and the cradle wasn't explicitly disclosed in Teller to have contacts, electrical contacts. The sensor has to talk to the cradle somehow. It says, Teller actually explicitly says that the sensor would be put into the cradle the way a conventional PDA or Palm Pilot at that time would have done. And those Palm Pilots and PDAs have electrical contacts. They have to communicate. It's common sense. And that common sense is supported by the Declaration of Krakuta, who says PDAs communicated by electrical contacts. I mean, that's the level of what we're talking about here, and it's supported by the record. There's no question that something like that is obvious. Going on to the next one, Your Honor. For example, claim 86, right? The only thing that's different about 86 is that what we just discussed is that the cradle is to receive communications from the sensor by infrared, another known mechanism for communicating data. Well, the references, the Root and the Teller reference together already said, look, Root said you've got a sensor, a mobile sensor. It can communicate with a computer either electrical connection direct or by IR. Teller said, for convenience purposes, you can put a cradle in between. So you put the sensor in the cradle, and the cradle talks to the computer. And remember, Teller says the cradle talks to the computer either by electrical connection or by IR. The sensor has to talk to the cradle, and it does so in any number of conventional ways, electrical, IR. And the record was replete with ways in which electrical connections and IR are interchangeable. So the substantial evidence in this case… You're out of time. Okay. Thank you, Your Honor. Okay. But as you argued, your hands were an appropriate distance apart, so maybe biosafe applies. By way of clarification, the Teller reference does not mention or disclose in any way, shape, or form IR. That was a completely false statement. You can look at the Teller reference in vain and strain, and you will never find that disclosure as it was recommended. There are a lot of different claims here. Even if we agreed with you that it's hard to overcome the total absence of discussion as it relates to 57 to 62, 65, and 86, there are a lot of other claims. Should we go through and see which ones we can really ferret an analysis from? For instance, claims 98 to 100? No, Your Honor, for two important reasons. First, with respect to Judge Reyna's observation, that is not your role. This court has been very clear in its pronouncements that necessary findings must be expressed, and I quote, with sufficient particularity to enable this court, without resort to speculation, to understand the reasoning of the board and determine whether it applied the law correctly and whether the evidence supported the underlying and ultimate factual findings. Well, it's claims 43 and 71. Yes. The PTAB determined that the relevant disclosure of 800 patents discusses remote displays only and equates virtual reality displays to cathode tube displays. I'm inserting there. In a similar matter as Poulton. On appeal, ICON doesn't address whether they had 800 patents that teaches a remote display, nor presents any evidence supporting its assertions that the non-portable system in Poulton could not inform a casita about which display to incorporate. That's insufficient to overturn the PTAB's findings. Actually, the arguments are sufficient to overturn it for three important reasons, Your Honor. With respect to Poulton, we showed that Poulton certainly did teach a way, and it taught a way for the reason that you can't incorporate this large array into a portable, handheld, and integral system. You can't put a cockpit-like display of CRTs on your hand, have it be handheld and be integrated. It won't work. That would violate the standard and demonstrates that that certainly teaches a way it shouldn't be incorporated. Beyond that, to get to that point, Your Honor, where they said that the virtual reality display could be only this CRT, that was a tortured and improper analysis that would require you to improperly incorporate limitations from the specification into the claim, number one, and also would have you ignore the disclosures of figures 21 and 22 that clearly show that that virtual reality display is indeed integrated and, well, portable. So for those reasons, their argument fails. That was two. And I see that my time has expired. Yes, you're out of time. May I have leave to conclude? Yes. Thank you, Your Honor. In this case, as you observe carefully what has happened, you look at the examiner's findings and their incorporation of reference. They incorporated just simply pages at a time. You have nothing but speculation to help you guess what happened at that level. That speculative and lack of any specific particularity required for review was simply incorporated by reference at the next level. As to these claims, reversal is appropriate, not only for the reason that there was no sufficient decision, but also on the basis of the actual find. Thank you. That was a long conclusion. Thank you, Your Honor. Could I just indicate that I made a false statement on the record. I'd like to just give you the citation for the contradict that assertion against me. Is that possible? That's fine. The reference in Teller that talks about infrared is at A1079, column 8, lines 31 to 47, and I quote, the data collected by sensor device 10 may be uploaded by first transferring the data to personal computer 35 by means of short range wireless transmission, comma, such as infrared. Okay, we can look at the citation. Yeah, infrared or radio. Counselor, I appreciate the correction. You shouldn't feel that you made a false statement. Maybe an incorrect one, not a false statement. Thank you. Okay. Thank you.